# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
August 18, 2010, Session

## WILLIAM G. ALLEN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. A-1004     Monte Watkins, Judge**

---

**No. M2009-02151-CCA-R3-PC - Filed April 26, 2011**

---

In 1968, a Davidson County grand jury indicted the Petitioner, William G. Allen, along with his four co-defendants, for the murders of two Davidson County police officers. The two murder cases were tried separately, and the Petitioner was convicted of the first degree murder of Officer Thomasson, after which he received a sentence of ninety-nine years. On direct appeal, this Court affirmed the Petitioner's conviction and sentence. The Petitioner brought his first petition for post-conviction relief in 1971. The post-conviction court denied this petition, and this Court affirmed its denial on appeal. In 1990, the Petitioner brought his second petition for post-conviction relief, which the post-conviction court dismissed without a hearing. On appeal, our supreme court remanded the case for a hearing, and, in 1994, the Petitioner, pursuant to the supreme court's instructions, re-filed his second petition for post-conviction relief. The Petitioner amended this petition three times and, in 2001, submitted a consolidated petition for post-conviction relief. After a hearing in 2007 and another in 2008, the post-conviction court denied relief. The Petitioner appeals, contending he is entitled to post-conviction relief because: (1) the grand jury that indicted him and his co-defendants did not represent a fair cross-section of the population, as required by the equal protection and due process clauses of the United States and Tennessee State Constitutions; (2) the sentencing statute under which he was sentenced was unconstitutional; and (3) the trial court improperly instructed the jury. After a careful review of the record, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES, J., joined. NORMA MCGEE OGLE, J., concurred in result only.

James A. Simmons, Hendersonville, Tennessee, for the Appellant, William G. Allen.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Robert Moore, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts
### A. Underlying Events

This case arises from the 1968 shooting deaths of two Nashville police officers, Thomas E. Johnson, who was black, and Charles Wayne Thomasson, who was white. On the evening of January 16, 1968, two black men attempted to use fraudulent money orders at a Nashville liquor store and, after being exposed by the store clerk, fled in a car with Michigan tags. Officer Johnson located the car parked at an apartment building on Hermosa Street in Nashville. Shortly after locating the car at the apartment building, Officer Johnson saw a white car pull away from the building. This car carried the Petitioner and his four co-defendants, each of whom was black. Officer Johnson began to follow the car down Sixteenth Avenue, and Officer Thomasson soon joined Officer Johnson in pursuit of the white car. Within minutes, the white car stopped where Sixteenth Avenue dead-ended. Officer Johnson parked a short distance from the white car and exited his patrol car. Officer Thomasson likewise parked and exited his patrol car. The exact sequence of the events that followed is unknown. It is clear, however, that, moments after exiting their patrol cars, the officers incurred fatal gunshot wounds. Officer Johnson died from his injuries at the scene, and Officer Thomasson died from his injuries three months later, in March 1968. In the same year, a Davidson County grand jury indicted the Petitioner and his co-defendants for the officers' murders. The two murder cases were separated for trial, and, in 1968, the Petitioner was convicted of Officer Thomasson's murder. He was later, in 1989, convicted of Officer Johnson's murder, based upon a 1986 superceding indictment, but this appeal concerns only the Defendant's 1968 conviction for Officer Thomasson's murder.

### B. Procedural Background

In Davidson County in 1968, grand jurors were chosen using the "key man" system, under which judges personally selected prospective grand jurors from the community at large.[1]  Following the shooting in this case, through the key man system, a Davidson County grand jury was selected to consider the State's proposed murder charges against the Petitioner and his co-defendants for their roles in the officers' deaths. The men were indicted

---

[1]In *Rose v. Mitchell*, the United States Supreme Court held that the "key man" system of grand juror selection used in Tennessee is "susceptible to abuse" for purposes of equal protection and due process clauses.  443 U.S. 545, 566 (1979).  We discuss this and related issues later in our opinion.

for Officer Thomasson's murder in case number A-1004 and for Officer Johnson's murder in case number A-1005.

Through counsel, the Petitioner brought a "plea in abatement," which would now be considered a motion to dismiss an indictment or presentment. The plea in abatement sought to dismiss the indictments against the Petitioner on the ground that the method used to select the members of the grand jury that indicted him violated the due process and equal protection clauses of the federal and state constitutions "in that the method used was prejudicial and discriminatory and d[id] not provide for the selection of Grand Jurors from a representative cross-section of the population of Davidson County, Tennessee." The parties stipulated at the time of the plea in abatement that: (1) the Davidson County population according to the 1960 census was 399,743; (2) blacks comprised 19.22% of the Davidson County population; (3) 191,818 Nashville residents were registered to vote; (4) between 1958 and March 1967, only eight blacks served as grand jurors; and (5) between March 1967 and September 1968, three grand juries sat, and only two of the grand jurors serving on these grand juries were black. The trial court denied the Petitioner's plea in abatement.

The Petitioner proceeded to trial for the murder of Officer Thomasson. At the conclusion of the trial, a Davidson County jury convicted him of first degree murder, and he was sentenced to ninety-nine years in the Tennessee Department of Correction. The Petitioner filed a direct appeal in which he again raised the issue of the legality of the manner in which his grand jury was selected. This Court, however, rejected this argument, holding that the Petitioner failed to bear "the requisite burden of proof to establish purposeful and systematic exclusion of members of his race from Davidson County Grand Juries" and affirmed the Petitioner's conviction. *Canady v. State*, 461 S.W.2d 53, 64 (Tenn. Crim. App. 1970). Both the Tennessee and United States Supreme Court denied certiorari in reference to the Petitioner's direct appeal. The United States District Court for Middle Tennessee denied the Petitioner's petition for habeas corpus in 1971.

The Petitioner filed his first petition for post-conviction relief in 1971, alleging again that blacks were systematically excluded from this grand jury pool. The post-conviction court conducted a hearing, during which the following evidence was presented: The parties entered a stipulation that only eight blacks served on grand juries between September 1958 and March 1967. The Criminal Court Clerk for Davidson County testified that he was unfamiliar with the process judges used to select grand juries, and he provided lists of the original and substitute appointees to Davidson County grand juries between 1965 and 1972. This list indicated each appointee's race. Three Davidson County judges testified about their role in the grand jury selection process, generally conveying that they endeavored to select a cross-section of the community in terms of profession, age, and race. The post-conviction court rejected the Petitioner's claim of systematic discrimination in the selection of his grand

3

jury and denied relief.

On appeal, in a 1973 unpublished decision, this Court affirmed the post-conviction court's decision. With respect to the Petitioner's constitutional claim, this Court held that neither the Criminal Court Clerk's testimony, the Clerk's records, nor the testimony of the criminal court judges established "sufficient evidence of systematic exclusion of negroes from the grand jury [that indicated] selection of those jurors in an arbitrary and discriminatory manner in violation of the constitution and the laws of the United States." *William Garrin Allen, II, v. State*, No. 1004, October Session, 1972, p. 13 (Tenn. Crim. App., Feb. 1, 1973). The Court stated it was unwilling to place "that stigma" on the criminal judges of Davidson County because doing so would "put them in violation of their oath of office" based on "mere speculation." *Id*. at 14. It held, "There is no evidence in the record that these trial judges have not acted discreetly, honestly, and conscientiously in their performance of this duty," and described a trial judge's duty to select grand jurors as "onerous and burdensome" given a trial judge's myriad other responsibilities. *Id*. In conclusion, this Court held that, because the record was "devoid of any showing of systematic exclusion of negroes from the grand jury," the Petitioner failed to carry his burden of proving "a denial of due process." *Id*.

Shortly after losing his first post-conviction appeal, the Petitioner escaped state custody in 1974 and remained at large until he was re-captured in 1986.[2] In 1989, the Petitioner brought his second petition for post-conviction relief, which he amended in 1990, again alleging intentional discrimination in the selection of his grand jury.[3] The post-conviction court summarily dismissed the petition without a hearing. In 1992, while the Petitioner's appeal from this dismissal of his petition for post-conviction relief was pending,

---

[2]In 1986, a Davidson County grand jury issued an indictment in case number 86-S-1256 that superseded the original 1968 indictment in case number A-1005 charging the Petitioner with Officer Johnson's murder. In 1989, in case number 86-S-1256, the Petitioner was tried and convicted of first degree murder for Officer Johnson's death and sentenced to serve a seventy-eight year sentence consecutively to the ninety-nine year sentence he received in this case. On appeal from the denial of his petition for post-conviction relief in case number 86-S-1256, the Petitioner's seventy-eight year sentence for Officer Johnson's murder was converted to a life sentence.

[3]Before 1995, the Post-Conviction Procedure Act did not limit the number of petitions a petitioner could file under its provisions. *See* T.C.A. §§ 40-30-101 through -124 (Repealed 1995). In 1995, however, the Legislature amended the Act to limit a petitioner to filing only one petition. *See* T.C.A. § 40-30-102(a) (2009). Because the Petitioner filed his second petition in 1989, which was before this limitation went into effect, his second petition is authorized under the pre-1995 Act. Because his post-1995 filings were pursuant to the Tennessee Supreme Court's reversal of the dismissal of his second pre-1995 petition, the filings relate back to the date of his second petition for post-conviction relief. Thus, the pre-1995 Act authorizes and governs the Petitioner's present petition for post-conviction relief.

4

the Sixth Circuit Court of Appeals issued an opinion regarding co-defendant Jefferson's petition for writ of habeas corpus. The Circuit Court concluded that intentional discrimination in violation of the equal protection clause took place in the selection of the grand jury that indicted Jefferson, the Petitioner, and their co-defendants. *Jefferson v. Morgan*, 962 F.2d 1185, 1192 (6th Cir. 1992). The Court granted Jefferson a writ of habeas corpus, ordering the State to re-indict Jefferson within ninety days or release him from custody.

In 1993, this Court affirmed the post-conviction court's summary dismissal of the Petitioner's second petition for post-conviction relief, but the Tennessee Supreme Court reversed the post-conviction court's dismissal and remanded for counsel to be appointed and for the Petitioner to amend his petition. *Allen v. State*, 854 S.W.2d 873 (Tenn. 1993). Upon remand in 1994, pursuant to the Supreme Court's ruling, the Petitioner re-filed his second petition for post-conviction relief, which he amended three times. In 1995, the post-conviction court held a hearing on the Petitioner's second petition, but it determined during this hearing that a conflict of interest existed between the Petitioner and his attorney, who also represented the Petitioner in his trial for the murder of Officer Johnson, because the Petitioner had filed a petition for post-conviction relief alleging this attorney ineffectively represented him in his trial for Officer Johnson's murder. The post-conviction court removed this attorney from this case and appointed new counsel for the Petitioner. The case was then removed from the active docket, subject to reactivation at the convenience of the Petitioner's new counsel.

In 2001, the Petitioner, through yet another attorney, filed a consolidated petition for post-conviction relief, alleging intentional discrimination in the selection of his grand jury as well as several other constitutional flaws in his judgment and sentence. In 2007, with each party's consent, the post-conviction court entered an amended judgment modifying the Petitioner's sentence of ninety-nine years to a sentence of life imprisonment. In the same year, the court held a hearing on the Petitioner's consolidated petition, wherein the Petitioner's trial counsel, Walter Whitworth Stokes, testified that "a very tense, very racially charged atmosphere" pervaded Nashville in 1968. According to Stokes, the State exploited this atmosphere by characterizing the Petitioner and his co-defendants to the media as "black militants who were opposed to police power in general." He confirmed that, based upon the method used to select the Petitioner's grand jury, he filed a plea in abatement, which the trial court denied.

In 2008, the court held another hearing on the Petitioner's second petition. The parties entered an agreed order stipulating to the facts found by the Federal District Court and affirmed by the Sixth Circuit in the *Jefferson* case. The order stated that "the court finds that . . . there is no dispute between the parties, and the facts found by the Jefferson Court would

5

be proven in this case." The order also set out the parties' agreement that the same grand jury indicted both Jefferson and the Petitioner. In *Jefferson*, the Sixth Circuit found that: (1) from 1958 to 1968, two Davidson County Criminal Court judges selected grand juries using the "key man" system, under which the judges personally selected grand jurors from the community at large, of which blacks composed 18.5%; (2) during this period, these judges selected thirty-three grand juries composed of thirteen members each, for a total of 338 grand jurors; and (3) only twenty of the 338 grand jurors were black, which meant that only 4.9% of the grand jurors selected between 1958 and 1968 were black. The Sixth Circuit's opinion included a detailed statistical analysis of the significance of these disparities. This analysis indicated that the expected and actual percentages of blacks on grand juries during this time were, statistically speaking, "significantly different" and that the odds that such a disparity occurred randomly rather than systematically were one billion to one.

At the conclusion of the 2008 hearing, the post-conviction court took the matter under advisement and, in 2009, issued a written order denying relief. In its order, the post-conviction court did not mention the Sixth Circuit's factual findings and conclusions of law in *Jefferson*. It first noted that the Petitioner's allegations were "the same allegations which he raised in his first petition for post-conviction relief," whose denial this Court affirmed. Finding that the Petitioner had presented "no additional substantiating evidence from his first petition for Post Conviction Relief" on the grand jury issue, the court found that the Petitioner failed to prove by a preponderance of the evidence the existence of intentional racial discrimination or systematic exclusion of blacks in the method of selection of grand jury members. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends the post-conviction court erred when it denied his petition for post-conviction relief. He argues: (1) he was deprived of equal protection of the law by the exclusion of African-American citizens from his grand jury; (2) his sentence is voidable because no constitutionally valid statute for first degree murder punishment existed at the time of his offense; and (3) he was denied due process of law due to three errors in the trial court's jury instructions.

The Petitioner filed his present petition under the pre-1995 Post-Conviction Procedure Act. T.C.A. §§ 40-30-101 through -124 (Repealed 1995). In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-105 (1989). Under the pre-1995 Act, a petitioner had the burden of proving the allegations in his petition by a

6

preponderance of the evidence.[4] *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). Upon review, when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State,* 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State,* 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State,* 40 S.W.3d 450, 457 (Tenn. 2001).

Under the pre-1995 Post-Conviction Procedure Act, a petitioner may present evidence of any ground for post-conviction relief except those grounds the post-conviction court finds "should be excluded because they have been waived or previously determined." T.C.A. § 40-30-111 (1989) (Repealed 1995). An issue is previously determined "if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." T.C.A. § 40-30-112(a) (1989) (Repealed 1995).

Our supreme court has described the leniency with which courts should construe the procedural rules governing petitions filed under the pre-1995 act. In *Swanson v. State*, the supreme court held that such petitions "may not readily be dealt with on technical grounds" and that, when confronted with the Act's procedural limitations, "the simple fact that a petitioner has had one bite at the post-conviction apple does not ipso facto preclude another bite . . . ." *See Swanson v. State*, 749 S.W.2d 731, 735 (Tenn. 1988). These principles guide our evaluation of the procedural issues raised in this case.

## A. Grand Jury Composition

### 1. Whether the Post-Conviction Procedure Act Bars Reconsideration of this Issue

The Petitioner argues this Court should reverse his conviction and dismiss his indictment because, in violation of United States and Tennessee constitutional law, African-Americans were systematically excluded from the grand jury that issued his indictment. He

---

[4]Under the current Post-Conviction Procedure Act, petitioners have the burden of proving factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2009).

argues first that, because no court has explicitly addressed whether the method used to select his grand jury violated the equal protection clause, the constitutionality of the manner in which his grand jury was selected has not been "previously determined." Thus, he asserts, the Post-conviction Procedure Act does not bar consideration of the issue in this case.

The Petitioner argues alternatively that, even if previous courts, in disposing of his prior appeals, previously determined the constitutionality of his grand jury's selection, the "law of the case" doctrine, under its exceptions, authorizes this Court to reconsider their rulings. He identifies two aspects of the present record that justify reconsideration of the constitutionality of the selection of his grand jury: first, in this second post-conviction petition, the court has before it the stipulated facts of *Jefferson v. Morgan*, which are "substantially different" from the facts prior courts dealing with this issue possessed; and, second, that a careful and accurate application of the equal protection clause to the facts of his case shows that the prior ruling that his grand jury's selection was constitutionally sound is "clearly erroneous."

The State responds, first, that the courts disposing of the Petitioner's prior appeals previously determined the constitutionality of his grand jury's selection. It contends that, though no court explicitly stated that the selection method offended neither the due process or equal protections clause, such a conclusion was implicit in each court's rejection of the Petitioner's claim under a "fair cross-section" analysis.

In response to the Petitioner's alternative argument that the law of the case doctrine under its exceptions authorizes reconsideration of the constitutionality of the selection of his grand jury, the State contends the law of the case doctrine does not require adherence to *Jefferson v. Morgan* because it is not a prior appeal of the "same case." The Petitioner's argument is not, however, that the rule of the law of the case doctrine applies but that two *exceptions* to the law of the case doctrine apply. He argues that, though the law of the case doctrine would ordinarily require adherence to the prior rejection of his grand jury claim on direct and post-conviction appeal, the circumstances of his case fall within several exceptions to the law of the case doctrine.

### a. Effect of Prior Courts' Disposition of the Petitioner's Grand Jury Claim

First, we reject the Petitioner's argument that, because no court has heretofore explicitly held that his grand jury's selection did not offend the equal protection clause, his objection to his grand jury's selection has not been "previously determined." As the Petitioner asserts, neither the court dealing with the Petitioner's direct appeal nor the court dealing with his first post-conviction appeal explicitly stated whether his grand jury's selection offended the equal protection clause. *See Canady*, 461 S.W.2d at 64. Each court,

8

however, explicitly rejected the Petitioner's claim of systematic discrimination in the selection of his grand jury, which is a necessary aspect of an equal protection violation. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979). Thus, each court considered and rejected the central, necessary element of an equal protection claim, the existence of systematic discrimination. In doing so, each court implicitly addressed whether the method used to select the Petitioner's grand jury violated the equal protection clause.

Prior courts' wholesale rejection of the Petitioner's claim is not, however, dispositive of whether the claim has been previously determined. As mentioned above, the pre-1995 Act describes the conditions under which an issue is "previously determined." An issue is previously determined "if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." T.C.A. § 40-30-112(a) (1989) (Repealed 1995).

The Petitioner has twice presented argument and evidence in support of his grand jury claim before his present appeal. Shortly before his trial, the Petitioner brought a plea in abatement wherein he argued that his grand jury was unconstitutionally selected, and he presented evidence in support of this claim. The trial court denied this plea, and the Petitioner was convicted of Officer Thomassen's murder. On direct appeal in 1970, the Petitioner raised the constitutionality of his grand jury's selection. This Court rejected his claim, finding that the evidence offered in support of his plea in abatement failed to establish the systematic exclusion of African-Americans from Davidson County grand juries during the relevant time period. *Canady*, 461 S.W.2d at 64. In 1971, the Petitioner filed his first petition for post-conviction relief and again raised the issue of his grand jury's selection. The post-conviction court held a hearing wherein the parties entered factual stipulations, and the Davidson County Criminal Court Clerk and several Davidson County judges testified. The post-conviction court denied relief. The Petitioner appealed the post-conviction court's rejection of his grand jury claim, and this Court affirmed the post-conviction court's denial of relief, finding the record "devoid of any showing of systematic exclusion of negroes from the grand jury." *William Garrin Allen, II*, p. 13.

Based on the foregoing, we conclude that the Petitioner twice has received "a full and fair hearing" on his grand jury claim: first, at the hearing on his plea in abatement; and second, at the hearing on his first post-conviction petition. *See* T.C.A. § 40-30-112 (Repealed 1995). As such, under the bare language of sections 40-30-111 and 112 of the pre-1995 Act, the constitutionality of the Petitioner's grand jury selection seems to have been "previously determined" in a way that would bar reconsideration of the substance of the Petitioner's claim in this forum. We turn, however, to examine whether exceptions exist to the pre-1995 Act's bar on previously determined issues.

**b. Possible Exceptions to the Bar on Previously Determined Issues**

As discussed above, the pre-1995 Post-Conviction Procedure Act, like the present Act, excludes "previously determined" claims from those which a petitioner may raise as a ground for post-conviction relief. T.C.A. § 40-30-111 (1989). The purpose of this bar on previously determined issues is to protect the State's interest in finality. *Villanueva v. State*, 883 S.W.2d 580, 581 (Tenn. 1994). The due process clause, however, requires that, in order for a state to terminate a claim for failure to comply with procedural requirements, "potential litigants [must] be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Harris v. State*, 301 S.W.3d 141, 145 (Tenn. 2010). Due process concerns, therefore, overcome the Act's bar on previously determined issues in some instances. *See Sample v. State*, 82 S.W.3d 267, 272-75 (Tenn. 2002) (holding that due process may prohibit strict application of the Post-Conviction Procedure Act's statute of limitations); *Phedrek T. Davis v. State*, No. M2009-01616-CCA-R3-PC, 2010 WL 1847379, *1-2 (Tenn. Crim. App., at Knoxville, May 14, 2010) (applying *Sample* to the Post-Conviction Procedure Act's bar on reconsideration of previously determined issues), *no Tenn. R. App. P. 11 application filed*.

Most commonly, the due process clause is applied in the context of intentional misconduct on the part of the State to justify relaxation of the Act's limiting provisions. No prosecutorial misconduct being alleged here, we consider whether due process considerations otherwise require the provisions' relaxation. In doing so, we keep in mind the caution in *Swanson* against readily dealing with claims under the pre-1995 Act on "technical grounds." 749 S.W.2d at 734.

In his brief, the Petitioner invokes the "law of the case" doctrine and argues that its exceptions recommend reconsideration of the constitutionality of his grand jury's selection. Alongside the Post-Conviction Procedure Act's bar on reconsideration of previously determined issues exists the common law "law of the case" doctrine. Under this doctrine, a court generally may not reconsider issues that have been decided in a prior appeal of the same case. *State v. Jefferson*, 31 S.W.3d 558, 560-61 (Tenn. 2000). Most often, this doctrine is invoked when a trial court encounters a previously litigated issue in the course of carrying out an appellate court's instructions upon remand. In *Memphis Publishing Company v. Tennessee Petroleum Underground Storage Tank Board*, our supreme court addressed the law of the case doctrine in great detail. 975 S.W.2d 303 (Tenn. 1998). In that case, the Court explained that the rule is "based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited" and that the rule "promotes the finality and efficiency of the judicial process, avoids indefinite relitigation of the same issue, fosters consistent results in the same litigation, and assures the obedience of lower courts to the decisions of appellate courts." *Id*. Thus, the policy concerns behind the law of the case doctrine are essentially identical to those

behind the Post-Conviction Procedure Act's bar on previously determined issues.

Given our conclusion that the courts disposing of the Petitioner's direct appeal and first post-conviction appeal determined the constitutionality of the selection of the Petitioner's grand jury, the general rule of law of the case doctrine would bar reconsideration of the Petitioner's issue. However, the law of the case doctrine has three exceptions. The doctrine allows that reconsideration of a previously determined issue may be appropriate where:

> (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal.

*Id*.

The law of the case doctrine has, in multiple instances, been invoked to support a post-conviction court's refusal to reconsider a previously determined issue. This is true, despite the fact that the Post-Conviction Procedures Act provides ample support for refusing to reconsider a previously determined issue without resort to this common law doctrine. *See John Earl Scales v. State*, No. M2003-01753-CCA-R3-PC, 2004 WL 1562542, *7 (Tenn. Crim. App., at Nashville, July 13, 2004), *perm. app. denied* (Tenn. Nov. 8, 2004). No Tennessee court has yet invoked the law of the case doctrine's exceptions, however, to support reconsideration of a previously determined issue in the post-conviction context.

The issue squarely before this Court, then, is whether the concerns shaping the law of the case doctrine's exceptions also, under the due process clause, require a suspension of the pre-1995 Act's bar on reconsideration of previously determined issues. Whereas the law of the case doctrine is not a constitutional mandate but a "longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited," the Act's bar on reconsideration of previously determined issues is a statutory limitation of the power of a court. *Memphis Publishing Co.*, 975 S.W.2d at 306. In our view, because the pre-1995 Act lists no exception to its bar on previously determined issues, we cannot recognize any such exception. Because the Petitioner failed to demonstrate how he otherwise was deprived of "an opportunity for the presentation of claims at a meaningful time and in a meaningful manner," he failed to show how due process requires that his case be excepted from the Act's bar on previously determined issues. *See Sample*, 82 S.W.3d at 272-75. We, conclude, therefore, that due process considerations require neither relaxation of the pre-1995

11

Act's bar on previously determined issues nor reconsideration of the Petitioner's claim. He is not entitled to relief on this issue.

**B. Sentencing**

The Petitioner contends that his sentence is voidable because no constitutionally valid sentencing provision for first-degree murder existed at the time he was sentenced. He argues that, as a consequence, the only valid punishment that may be imposed upon him is the 1919 Act's second degree murder punishment statute, which *Miller* did not find unconstitutional. *Miller v. State*, 584 S.W.2d 758 (Tenn.1979). The State responds that this Court is bound by the Tennessee Supreme Court's holding, in *Miller v. State,* that the 1915 Sentencing Act was in effect when the Defendant was sentenced.

In 1968, when this offense was committed, the statute that prescribed the punishment for first degree premeditated number authorized a sentence of death, life imprisonment, or a term over twenty years. T.C.A. § 39-2405. The Petitioner was convicted in Officer Thomasson's death and sentenced to a term of ninety-nine years. *Canady v. State*, 461 S.W.2d 53, 55-56 (Tenn. Crim. App. 1970). In 1973, the Tennessee General Assembly repealed the existing penalty provisions for first degree murder and enacted a new version of section 39-2405. The Tennessee Supreme Court, however, struck down the 1973 Act because it embraced more than one subject and was broader than its title. *State v. Hailey*, 505 S.W.2d 712, 715 (Tenn. 1974). In response the General Assembly enacted Chapter 462 of the Public Acts of 1975, which provided that all person convicted of first degree murder would receive the death penalty. In 1977, the Tennessee Supreme Court declared that this provision, too, was unconstitutional and explained that its ruling revived the non-capital sentencing provisions of the 1919 Act, which allowed a jury to sentence a person convicted of first degree murder to life imprisonment or some other period of imprisonment over twenty years. *Collins v. State*, 550 S.W.2d 643 (Tenn. 1977). In 1979, however, the Tennessee Supreme Court overruled *Collins*, thereby reviving the 1915 Act prescribing the punishment for first degree murder. *Miller*, 584 S.W.2d at 758. The court in *Miller* explained that its holding had the effect of reviving the 1915 Act, which provided a mandatory sentence of life imprisonment for all persons convicted of first degree murder. *Id*. at 762.

The Petitioner's contention that no constitutionally valid punishment for first degree murder existed in 1968 is based upon the fact that the General Assembly expressly repealed Chapter 181 of the 1915 Act four days before it enacted the 1919 first-degree punishment statutes, which were subsequently found to be unconstitutional in *Miller*. *See* 1919 Tenn. Pub. Acts, Ch. 4; *State v. Bomer*, 354 S.W.2d 763, 766 (1962); *Smith v. Bomar*, 368 S.W.2d 748, 750-51. He argues that, because a repealed act may only be re-enacted by "positive re-

enactment in constitutional form," and no such legislative action has taken place, the 1915 Act has never been re-enacted. Further, he contends that, because the "saving statute" of the Tennessee Code provides for the "revival" only of the statute existing immediately before the enactment of the statute found unconstitutional, the saving statute did not revive the repealed 1915 Act when the *Miller* court found the 1919 Act unconstitutional. As a consequence, he argues, no constitutional first degree murder punishment statute existed in 1968. He argues that, given the separation of powers doctrine, the Supreme Court overstepped its jurisdiction when it attempted to revive the 1915 Act in *Miller*.

The Petitioner supports his argument with a well reasoned analysis and extensive citation to authority. We, however, are constrained by the Tennessee Supreme Court's holding in *Miller* that the first degree murder provisions of the 1915 Act apply to offenses, such as the present one, committed in 1968. *Wallace v. State*, 121 S.W.3d 652, 656 (Tenn. 2003); *Nichols v. State*, 90 S.W.3d 576, 586 (Tenn. 2002). The Petitioner is not entitled to relief on this issue.

### C. Jury Instructions

The Petitioner claims he was denied due process of law due to three errors in the jury instructions. A trial court has the duty, in criminal cases, to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. *See State v. Burns*, 6 S.W.3d 453, 464 (Tenn. 1999); *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998). Nothing short of a "clear and distinct exposition of the law" satisfies a defendant's constitutional right to trial by jury. *State v. Phipps*, 883 S.W.2d 138, 150 (Tenn. Crim. App. 1994). In other words, the court must instruct the jury on those principles closely and openly connected with the facts before the court, which are necessary for the jury's understanding of the case. *Elder*, 982 S.W.2d at 876. Because questions of the propriety of jury instructions are mixed questions of law and fact, our standard of review here is de novo, with no presumption of correctness. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

Generally, "a defendant has a constitutional right to a correct and complete charge of the law." *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990), *superceded by statute on other grounds as stated in State v. Reid*, 91 S.W.3d 247, 314 (Tenn. 2002). When reviewing jury instructions on appeal to determine whether they are erroneous, this Court should "review the charge in its entirety and read it as a whole." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). The Tennessee Supreme Court, relying on the words of the United States Supreme Court, has noted that:

[J]urors do not sit in solitary isolation booths parsing instructions for subtle

13

shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380-81 (1990)). A jury instruction is considered "prejudicially erroneous," *Hodges*, 944 S.W.2d at 352, only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Id.* Even if a trial court errs when instructing the jury, such instructional error may be found harmless. *State v. Williams*, 977 S.W.2d 101, 104 (Tenn. 1998). We address in turn each of the Petitioner's objections to the jury instructions issued in his case.

### i. Malice Instruction

The Petitioner first contends the trial court erred when it instructed his jury to presume malice, an essential element of first degree murder, if it found that a firearm was used in the commission of the offense. He argues that, because such an instruction clearly flouts the constitutional bar, set out in *Sandstrom v. Montana*, 422 U.S. 510 (1979), against such an instruction, the instruction denied him due process. The State submits that the instruction was erroneous but argues the error was harmless because sufficient evidence of malice was otherwise presented.

At the Petitioner's 1968 trial for first degree murder, after informing the jury that malice was an essential element of first degree murder, the trial court instructed the jury to presume malice if it found the Petitioner to have used a deadly weapon to carry out the victim's death. Specifically, the trial court said, "[W]here the use of a deadly weapon by the party killing is shown, and the death is clearly shown in the proof to have resulted from its use by him, it is a presumption of law that the killing was done maliciously."

An instruction that allows a jury to presume malice, an element of the charged offense, is unconstitutional. *Sandstrom*, 422 U.S. at 524; *Sands v. State*, 903 S.W.2d 297 (Tenn. 1995) (adopting *Sandstrom* and holding that it applies retroactively). The error of such an instruction, however, is subject to harmless error analysis. *See Rose v. Clark*, 478 U.S. 570, 582 (1986).

In this case, the post-conviction court found that, although the jury instruction on malice in this case was in error, the error was harmless. It based its finding of harmlessness on evidence offered at trial that the Petitioner engaged in a shoot out with police that, in its view, "substantiated" the existence of malice. We agree with the post-conviction court.

14

As the parties agree, *Sandstrom* clearly prohibits the instruction given on malice in this case. This error, however, is not a proper basis for post-conviction relief in the absence of proof it was not harmless. *See Rose*, 478 U.S. at 582. The Petitioner offered no such proof. In fact, the record on appeal demonstrates, as the post-conviction court found, that the jury had before it evidence that the Petitioner engaged police in a "shoot out." In our view, such evidence alone supports the jury's finding of malice, making the presumption of malice superfluous. The trial court's error, therefore, is not a proper basis for post-conviction relief. *See Williams*, 977 S.W.2d at 104. Having reviewed the post-conviction court's legal conclusion de novo, we agree that the Petitioner is not entitled to relief on this basis. *See Rush*, 50 S.W.3d at 427.

### ii. Reasonable Doubt Instruction

The Petitioner next contends that the trial court erred in two respects when it instructed the jury on reasonable doubt. He attacks first the trial court's use of the term "moral certainty" to describe the "beyond a reasonable doubt" standard. He also complains that the trial court confused the jury when it defined "beyond a reasonable doubt" as a higher burden than a "preponderance" or "clear and convincing" without defining the latter terms. The State responds that the use of the phrase "moral certainty" has been repeatedly upheld on appeal and that nothing in the jury instructions otherwise suggests a higher degree of doubt than is required for acquittal under the reasonable doubt standard.

As the Petitioner correctly notes in his brief, where the phrase "moral certainty" appears in a jury instruction, the remainder of the instruction must properly state the prosecution's burden of proof. *Victor v. Nebraska*, 511 U.S. 1, 15-16 (1994). The phrase does not offend due process if it "was placed in such a context that a jury would understand that it meant certainty with respect to human affairs." *Pettyjohn v. State*, 885 S.W.2d 364, 365 (Tenn. Crim. App. 1994). In fact, this Court on several occasions has upheld the use of the phrase "moral certainty" to explain the reasonable doubt standard. *See Carter v. State*, 958 S.W.2d 263, 266 (Tenn. Crim. App. 1995); *Nichols v. State*, 877 S.W.2d 722, 734 (Tenn. 1994); *State v. Sexton*, 917 S.W.2d 263. 266 (Tenn. Crim. App. 1995); *Pettyjohn*, 885 S.W.2d at 366. The main inquiry is whether "taken as a whole, the instructions . . . correctly convey the concept of reasonable doubt to the jury." *Victor*, 511 U.S. at 5.

In this case, the trial court issued the following instruction to the jury on its burden of determining whether the prosecution established the Petitioner's guilt "beyond a reasonable doubt":

> By reasonable doubt is not meant that which of possibility may arise, but that
> doubt engendered by an investigation of the whole proof, and an inability, after

15

such an investigation to let the mind rest easily upon the certainty of guilt. Absolute certainty is not demanded by the law to convict any criminal charge, but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense and as to every grade of crime charged or included in the presentment.

Although the Petitioner, in his consolidated petition for post-conviction relief, raised the issue of the trial court's "reasonable doubt" instruction, the post-conviction court did not address this issue in its written order denying relief.

Upon our review, we conclude that the instructions on reasonable doubt in this case were not improper. The trial court first described reasonable doubt as "doubt engendered by an investigation of the whole proof[] and an inability, after such an investigation[,] to let the mind rest easily upon the certainty of guilt." By leading with this description, the court provided a context for the jury to understand that, when it later referred to "moral certainty," it referred to certainty "with respect to human affairs" and not moral conviction. *Pettyjohn*, 885 S.W.2d at 365. Thus, nothing in the instruction suggests a higher degree of doubt than that which is necessary for an acquittal under the reasonable doubt standard. As such, we conclude that, though it employed the term "moral certainty," the instruction "correctly conveyed the concept of reasonable doubt to the jury." *See Victor*, 511 U.S. at 5. The instruction did not, therefore, deny the Petitioner due process of law, and he is not entitled to relief on this basis.

### iii. Premeditation and Deliberation Instruction

The Petitioner next points to language utilized by the trial court to describe "premeditation" and "deliberation" that our Supreme Court subsequently held should be abandoned. *See State v. Brown*, 836 S.W.2d 530, 543 (Tenn. 1992). While he submits that *Brown*'s rule does not require reversal of every pre-*Brown* use of this language, he argues that the principles behind *Brown*'s bar require reversal in this case. The State responds that the inclusion of abandoned language alone does not establish constitutional error.

In this case, in the course of distinguishing between first and second degree murder, the trial court gave the following description of the legal meaning of "deliberation":

The distinctive feature of the murder in the first degree is premeditation, and this element is superadded by the statute to the common law definition of murder and involves a previously formed design, or actual intention to kill the person slain. It is not necessary that such a design should have been conceived, or preexisted in the mind for any definite period of time anterior to

16

its execution.

It is sufficient if it precedes the actual assault, how short soever the interval of time may be, for the length of time is not of the essence of this element of this offense.

The purpose to kill is no less premeditated, in the legal sense of the term, if it was deliberately formed but a minute preceding the act by which death is produced than if it had been formed an hour or other period of time before. The mental state of the assailant at the time, rather than the length of time the act may have been premeditated, is the material point to be considered. The question of vital importance is, was the mind of the assailant at the moment of the killing, so far free from excitement or passion as to be capable of premeditation, as before explained, and was the death of the party slain the object sought to be accomplished–the end determined on.

As the Petitioner correctly notes, *Brown* instructed trial courts to abandon the use of the phrase "premeditation may be formed in an instant" to instruct a jury on "premeditation." *Id*. The Supreme Court later explained the phrase's danger lay in its tendency to imply that deliberation, too, "may be formed in an instant." *State v. West*, 844 S.W.2d 144 (Tenn. 1992). The prohibition in *Brown*, however, is not retroactive in application. *Thompson v. State*, 958 S.W.2d 156, 173 (Tenn. Crim. App. 1997), *perm. app. denied* (Tenn. Oct. 20, 1997).

The Petitioner raised the issue of the trial court's "deliberation" instructions in his consolidated petition for post-conviction relief. The post-conviction court failed to address this issue, as well, in its written order denying the Petitioner post-conviction relief.

The Petitioner argues his jury instructions, though they did not include the exact language proscribed in *Brown*, had the same tendency as the instructions in *Brown* to imply that premeditation may be "formed in an instant." He insists that, although the *Brown* rule is not retroactive, courts considering a trial court's use of the prohibited jury instructions have upheld the instructions only where the evidence otherwise sufficiently established the existence of deliberation. Our review of case law, however, reveals no such trend.

The cases to which the Petitioner cites are direct appeal opinions addressing the sufficiency of the evidence. *See State v. Joe Nathan Person*, 1993 WL 381218 (Tenn. Crim. App. Sept. 29, 1994), *perm. app. denied* (Tenn. Feb. 7, 1994); *State v. West*, 844 S.W.2d 144 (Tenn. 1992). In such cases, the sufficiency of the evidence of deliberation is a valid, necessary inquiry. The improper jury instructions used in those cases were relevant to the

courts' analyses only insofar as they bore on the jury's ability to determine the defendant's guilt. To inquire into the sufficiency of the evidence at this juncture in this case would be to reopen an issue that the Petitioner has previously litigated during previous appeals. The Petitioner, then, has failed to establish that the inclusion of the language offensive to *Brown* in his jury instructions was constitutional error that requires reversal of his conviction. He is not entitled to relief on this issue.

### iv. Cumulative Error

The Petitioner contends that the cumulative effect of the trial court's errors in instructing the jury entitles him to post-conviction relief. Given our conclusion that only one of the objected-to instructions was in error, albeit harmless, cumulative error analysis is not appropriate in this case. We, therefore, reject the Petitioner's claim of cumulative error. He is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and applicable law, we conclude the post-conviction court properly dismissed the Petitioner's petition for post-conviction relief. As such, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

18